UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| RODNEY BELL,<br><br>                    Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a foreign<br>entity,<br><br>                    Defendant. | Case No.<br><br><br>COMPLAINT and JURY DEMAND |

Plaintiff states and alleges as follows:

**INTRODUCTION**

1.      Plaintiff Rodney Bell ("Plaintiff") is asserting claims against Wells Fargo Bank,

N.A. ("Wells Fargo") based on his wrongful termination on November 7, 2018, in retaliation for

his repeated complaints to Wells Fargo's leadership regarding its violations of federal law in direct

contravention of the Consumer Financial Protection Act ("CFPA"), Sarbanes-Oxley Act ("SOX"),

and Fair Labor Standards Act ("FLSA").

**PARTIES**

2.      Plaintiff is a resident of Carlisle, Warren County, Iowa.

3.      Wells Fargo is a publicly held company organized under the laws of the State of

California and authorized to do business in the State of Iowa.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, based on federal question

presented by CFPA, SOX and FLSA, and 28 U.S.C. § 1332, based on diversity of citizenship.

2.     Venue is appropriate because Wells Fargo regularly transacts business in and has significant and continuous contact in this district, a substantial part of the acts or omissions giving rise to the claims occurred in this district, and a substantial part of the property related to the subject of the action is located in this district.

## FACTUAL ALLEGATIONS

3.     Plaintiff was employed by Wells Fargo beginning in October 2005 until November 7, 2018.

4.     At the time of his termination, this Plaintiff was a Centralized Sales Manager 2, in Wells Fargo's Premier ONE Home Mortgage Division.

5.     Following Plaintiff's separation from Wells Fargo, he filed for unemployment insurance benefits with Iowa Workforce Development ("IWD"). Wells Fargo did not contest Plaintiff's claim and IWD subsequently approved Plaintiff's claim.

6.     A tolling agreement was entered into between the parties suspending the time to file a complaint from May 2, 2019, through October 1, 2019.

7.     Plaintiff filed whistleblower complaints under the Sarbanes Oxley Act of 2002 ("SOX") and the Consumer Financial Protection Bureau ("CFPB"), 18 U.S.C. § 1514A(b)(1)(a) and 12 U.S.C. § 5567(c)(1)(A), respectively, on October 2, 2019 with United States Department of Labor's Occupational Safety and Health Administration's ("OSHA's") Financial Sector Whistleblower Complaint Division.

8.     Under SOX, OSHA had 180 days, until March 30, 2020, to investigate the Plaintiff's whistleblower claim against Defendant Wells Fargo or Plaintiff could opt to pursue the complaint in federal court.

9.      OSHA had 210 days, until April 29, 2020, to review Plaintiff's whistleblower claim under the CFPB or Plaintiff could opt to pursue the complaint in federal court.

10.     Plaintiff is exercising his right to pursue his complaints in federal court.

11.     In addition to Plaintiff's role as a Centralized Sales Manager 2, Plaintiff's role was elevated when he was selected and placed into a full-time "go-to-market" special assignment in early 2017.

12.     Plaintiff was one of a select group of individuals across Wells Fargo chosen for this project, providing him with access to top leaders across multiple lines of business to communicate concerns and propose solutions.

13.     The "go to market" phraseology was designed to represent an all-encompassing home mortgage lending strategy for Wells Fargo to create a seamless, repeatable, and sustainable process to serve its customers in meeting their home mortgage lending needs while ensuring federal banking regulatory requirements were in compliance, recorded and submitted accurately.

14.     Plaintiff was tasked with a telephony project, a component of Wells Fargo's overall growth strategy.

15.     The telephony project identified the need to research and propose a cell phone recording application that could be utilized by all Home Mortgage Consultants ("HMCs") across the Wells Fargo footprint.

16.     Part of the cell phone recording application solution was to ensure all HMCs across Wells Fargo comply with federal banking regulations, assist with the management of HMC timekeeping records, record loan applications for quality assurance, and provide a clear path for all HMCs to maximize the incentive compensation plan available.

17.    HMC roles across Wells Fargo operate in two business channels referred to as the Centralized Home Mortgage Division "Centralized" and the Distributed Home Mortgage Division "Distributed".

18.    HMCs working in a Centralized channel work in a centrally located call center, for example, Des Moines, where recording and monitoring loan applications and calls, are built into the design and structure of the environment.

19.    HMCs working in a Distributed channel are disseminated into the field for face-to-face interactions, working predominantly off of their corporate issued cell phone with the inability to have their loan applications and calls recorded or monitored.

20.    HMCs working in the Premier ONE Home Mortgage Division were testing the workability of having a hybrid HMC channel that is centrally located, with the additional ability to build relationships with customers all over the country using their corporate issued cell phone with an area code emulating the geographic territory assigned to the individual HMC.

21.    Plaintiff's new role provided him a unique lens into the breadth and depth of the mortgage process across Wells Fargo.

22.    Plaintiff discovered several alarming deficiencies he believed to be in violation of the Truth in Lending Act, Real Estate Settlement Procedures Act, Home Mortgage Disclosures Act, and Equal Credit Opportunity Act, requiring immediate action due to the necessity of Wells Fargo to report accurate information to consumer federal banking agencies.

23.    Plaintiff conveyed on numerous occasions, through several communication vehicles, to multiple levels of senior leadership, for example, Liz Bryant (Executive Vice President) and JR Russell (Senior Vice President), that the lack of cell phone recording tools and

resources for all HMCs across the lines of business were causing Wells Fargo to violate federal laws.

24.     Plaintiff communicated to senior leadership that the absence of a cell phone recording tool prevented HMCs from being paid for actual hours work, including overtime.

25.     Plaintiff imparted to senior leadership that the nonexistence of a cell phone recording tool prevented Wells Fargo from scrupulously recording and truthfully transmitting to the federal government the required data to comply with federal banking regulatory requirements, for example, Equal Credit Opportunity Act and Home Mortgage Disclosure Act, among others.

26.     Plaintiff raised to senior leadership that Wells Fargo could not demonstrate an accurate picture of its regulatory compliance without a cell phone recording tool and resource when the Distributed channel of HMCs were taking loan applications without the calls being recorded.

27.     The HMCs in the Distributed channel represent approximately 85% of the total population of HMCs throughout Wells Fargo.

28.     Plaintiff provided solutions to senior leadership repeatedly to adequately track all cell phone activity by HMCs to ensure compliance with federal banking regulations, along with the Fair Labor Standards Act.

29.     The solutions Plaintiff provided was substantially lower than anticipated financial expectations and forecasts.

30.     Wells Fargo refused to enact the solutions recommended by Plaintiff.

31.     After Plaintiff persistently raised concerns via several communication streams while offering financially palatable solutions related to Wells Fargo's lack of capability to record

cell phone calls for all HMCs, Plaintiff's role was initially diminished, then he was ultimately terminated.

32.     Ironically, Plaintiff was purportedly terminated for allowing his HMCs, who were in Premier ONE, a hybrid of the Centralized and Distributed channels, to take mortgage applications from their corporate issued cell phone.

## COUNT I:  VIOLATION OF 18 U.S.C. § 1514A

Plaintiff realleges and incorporates herein by reference the allegation of paragraphs 1 through 32 above.

33.     Defendant Wells Fargo has violated Section 806 of the Sarbanes Oxley Act of 2002 ("Sarbanes Oxley Act") (18 U.S.C. § 1514A) because its decision to terminate the Plaintiff's employment was motivated, in part, by Plaintiff providing information to his supervisors about conduct that he reasonably believed violated federal laws designed to protect shareholders.

34.     Defendant Wells Fargo is covered by the Sarbanes Oxley Act because, upon information and belief, it (a) has "a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 781)"; and (b) it "is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o (d))" 18 U.S.C. § 1514A (a).

35.     The Plaintiff engaged in activity that is protected by 18 U.S.C. § 1514A when the Plaintiff informed his supervisors at Wells Fargo about conduct that he reasonably believed violated "provision[s] of Federal law relating to fraud against shareholders," including, but not limited to, SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), which prohibits Wells Fargo from making false statements or engaging in deceptive practices in connection with the sale of securities. 18 U.S.C. §1514A(a)(1)(C).

36.     Within two weeks after Plaintiff last informed his supervisors about this conduct, Wells Fargo terminated his employment.

37.     Wells Fargo has violated 18 U.S.C. § 1514A because Plaintiff's protected activity was a contributing factor in its decision to terminate his employment.

38.     Pursuant to 18 U.S.C. § 1514A(c), Plaintiff is entitled to all relief necessary to make him whole, including, but not limited to, reinstatement with the same seniority status that the employee would have had, but for the retaliation; the amount of back pay, with interest; and compensation for any special damages sustained as a result of the retaliation, including litigation costs, expert witness fees, and reasonable attorney fees.

WHEREFORE, Plaintiff Rodney Bell prays for judgment against Defendant Wells Fargo Bank, N.A., for all relief necessary to make Plaintiff whole, including, but not limited to: 1) reinstating Plaintiff to his position at Wells Fargo with the same seniority status that he would have had but for the retaliation; 2) awarding Plaintiff back pay, with interest; 3) compensating Plaintiff for all special damages sustained as a result of the retaliation, including litigation costs, expert witness fees, and reasonable attorney fees; 4) awarding Plaintiff compensatory damages stemming from Defendant Wells Fargo's unlawful conduct; and 5) granting such other and further relief as the Court deems appropriate.

## COUNT II:  VIOLATION OF 12 U.S.C. § 5567

Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 38 above.

39.     Plaintiff Rodney Bell is a "covered employee" within the meaning of 12 U.S.C. § 5567(b) because he was employed by Wells Fargo as an "individual performing tasks related to the offering or provision of a consumer financial product or service."

40.     Wells Fargo is a "covered person[s]" within the meaning of 12 U.S.C. § 5567(b), because it engages in offering or providing consumer financial products or services within the meaning of 12 U.S.C. § 5481(6), and/or service providers, within the meaning of 12 U.S.C. § 5567(b).

41.     Plaintiff reasonably believed that Wells Fargo was engaging in unfair, deceptive or abusive acts or practices, offering or providing to consumers financial products or services that did not conform with federal consumer financial law, and/or were otherwise committing acts or omissions in violation of federal consumer financial law, within the meaning of 12 U.S.C. § 5536.

42.     As such, Plaintiff reasonably believed that Wells Fargo was engaging in a violation of a law, rule, standard or prohibition, subject to the jurisdiction of, or enforceable by the Bureau of Consumer Financial Protection, within the meaning of 12 U.S.C. § 5567(a)(1).

43.     Plaintiff engaged in activity protected by 12 U.S.C. § 5567 by providing information and objecting to Wells Fargo's conduct described in paragraphs 116 and 117 above.

44.     Wells Fargo has violated 12 U.S.C. § 5567 because its decision to terminate Plaintiff's employment was motivated by reason of Plaintiff's objection to an activity, policy, practice, or assigned task that [he] reasonably believed to be in violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by the United States Consumer Financial Protection Bureau.

45.     Pursuant to 12 U.S.C. § 5567 (c)(4)(D)(ii), Plaintiff is entitled to all relief necessary to make him whole, including, but not limited to, compensatory damages, reinstatement with the same seniority status that the employee would have had, but for the retaliation and discharge; the amount of back pay, with interest; and compensation for any special damages sustained as a result

of the retaliation and discharge, including litigation costs, expert witness fees, and reasonable attorney fees.

WHEREFORE, Plaintiff Rodney Bell prays for judgment against Defendant Wells Fargo Bank, N.A., for all relief necessary to make Plaintiff whole, including, but not limited to: 1) reinstating Plaintiff to his position at Wells Fargo with the same seniority status that he would have had but for the retaliation and discharge; 2) awarding Plaintiff back pay, with interest; 3) compensating Plaintiff for all special damages sustained as a result of the retaliation and discharge, including litigation costs, expert witness fees, and reasonable attorney fees; 4) awarding Plaintiff compensatory damages stemming from Defendant Wells Fargo's unlawful conduct; and 5) granting such other and further relief as the Court deems appropriate.

## COUNT III:  VIOLATION OF 29 U.S.C. § 215(a)(3)

Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 45 above.

46.     The FLSA forbids employers to discriminate against any employee because such employee has filed any complaint related to the FLSA.

47.     As used in the statute, the phrase "filed any complaint" includes verbal complaints about any wage and hour violations to employers.

48.     Plaintiff's complaints about HMCs at Wells Fargo not receiving overtime pay were protected activities.

49.     Wells Fargo subjected Plaintiff to diminished work responsibilities and eventually terminated him for making those complaints, in violation of the FLSA, specifically 29 U.S.C. § 215(a)(3).

50.     Such retaliation is likely to deter a reasonable employee from complaining about wage and hour violations.

51.      As a result of Defendant Wells Fargo's unlawful retaliation, Plaintiff is entitled to compensatory and liquidated damages.

52.      Plaintiff is also entitled to compensation in an amount to be determined at trial as compensatory damages for the emotional distress and non-pecuniary harm suffered as a result of Defendant Wells Fargo's retaliatory acts.

53.     Defendant Wells Fargo's conduct as aforesaid was retaliatory, and deeply inimical to the compelling public interest in deterring unlawful exploitation of workers.

54.     Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

55.     In light of the willful, wanton and reckless nature of Wells Fargo's conduct herein, and the substantial public interest in deterring and punishing such reprehensible conduct, punitive damages should be imposed against Defendant Wells Fargo in an amount sufficient to punish Defendant Wells Fargo and to deter Wells Fargo and other employers from engaging in similar misconduct in the future.

WHEREFORE,  Plaintiff Rodney Bell prays for judgment against Wells Fargo Bank, N.A., in an amount fully sufficient to compensate him for Wells Fargo's violation of the FLSA, for liquidated and punitive damages, for attorneys' fees and costs, and for such other relief as the Court may deem appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable to a jury in this case.

*/s/ Joseph G. Gamble*
Joseph G. Gamble  AT0009417
Wesley T. Graham  AT0011184
DUNCAN GREEN, P.C.
400 Locust Street, Suite 380
Des Moines, IA 50309
Telephone:  (515) 288-6440
Facsimile:  (515) 288-6448
jgamble@duncangreenlaw.com
wtgraham@duncangreenlaw.com
ATTORNEYS FOR PLAINTIFF